**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**JULIE RAINWATER, individually and on
behalf of all others similarly situated**                                    **PLAINTIFF**


**VS.**                                 **CASE NO. 4:15cv590 JLH**


**KEURIG GREEN MOUNTAIN, INC.**                                   **DEFENDANT**

**BRIEF IN OPPOSITION TO MOTION TO REMAND**

     Defendant Keurig Green Mountain, Inc. ("**Keurig**" or "**Defendant**") submits this Brief in Opposition ("**Opposition**") to Plaintiff's Motion to Remand ("**Motion to Remand**").

**I.**      **INTRODUCTION AND BACKGROUND**

     On August 21, 2015, Plaintiff Julie Rainwater ("**Plaintiff**") filed a putative Class Action Complaint (the "**Complaint**") against Keurig in the Circuit Court of Faulkner County, Arkansas, Case No.: 23CV-15-818.[1] The Complaint alleges that Keurig engaged in "anticompetitive conduct," that has "forc[ed]" the purported class members to "pay supracompetitive prices for Keurig K-Cups." Id. ¶ 125. The purported "**Arkansas Class**" is alleged to include all persons and entities in Arkansas that indirectly purchased Keurig K-Cup portion packs ("**K-Cups**") at any time between July 2010 and "such time as the anticompetitive effects of Keurig's conduct . . . ceases." Complaint ¶ 127.[2] Plaintiff's allegations are nearly identical to those made in the complaint filed by the Indirect Purchaser Plaintiffs ("**IPPs**") in a multidistrict litigation pending in the United States District Court for the Southern District of New York, styled: *In Re: Keurig*

---

[1] Upon removal, the Complaint was docketed in this case as ECF No. 2, (Sept. 21, 2015).

[2] Keurig reserves all rights and arguments with respect to any attempt by Plaintiff to certify a class.

*Green Mountain Single-Serve Coffee Antitrust Litigation*, Case No. 1:14-md-02542-VSB

(S.D.N.Y.) (the "**Multidistrict Litigation**"), which, like Plaintiff's Complaint, purports to bring

claims on behalf of a putative class of indirect purchasers of K-Cups in Arkansas.  *See* IPP MDL

Compl. ¶ 214(b) (defining putative "Arkansas Indirect-Purchaser Class").[3]

Keurig filed a Notice of Removal pursuant to 28 U.S.C. § 1446(b) on September 21,

2015.  ECF No 1.  The Notice of Removal included the requisite "short and plain statement"

establishing that removal is proper under the Class Action Fairness Act of 2005 ("**CAFA**"), 28

U.S.C. §§ 1332(d), 1453, 1711-1715, which grants federal district courts original jurisdiction

over class actions in which the amount in controversy exceeds $5 million and any class member

and any defendant are citizens of different states.

On September 22, 2015, Plaintiff filed a Motion to Remand requesting that this action be

remanded back to state court and asserting that federal jurisdiction does not exist under CAFA

because the amount in controversy does not exceed $5 million.[4]  ECF Nos. 3, 4.  Plaintiff does

---

[3] *Compare* Complaint ¶¶ 136-44 (Arkansas Deceptive Trade Practices Act), *and* id. ¶¶ 145-47 (Arkansas unjust enrichment), *with* 2d Consolidated Am. Indirect Purchaser Pl. Class Action Compl., ¶¶ 450-54 In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litig., No. 1:14-md-02542-VSB (S.D.N.Y. Feb. 11, 2015), ECF No. 238 ("**IPP MDL Compl.**") (attached hereto as Exhibit 2) (Arkansas Deceptive Trade Practices Act), *and* id. ¶¶ 485-86 (Arkansas unjust enrichment).  *Compare also, e.g.*, IPP MDL Compl. ¶ 3 ("By entering into an extensive web of anticompetitive written agreements with co-conspirators and participants throughout the supply chain, Keurig has gained control over every aspect of the Keurig Compatible Cup Market (as defined below), enabling Keurig to exclude competition from this market."), *with* Complaint ¶ 11 (verbatim).

[4] Three days after Plaintiff's Motion to Remand was filed, Keurig filed a Notice of Potential Tag-Along Action ("**Tag-Along Notice**") with the Judicial Panel on Multidistrict Litigation ("**JPML**") pursuant to JPML Rule of Procedure 7.1.  Notice of Potential Tag-Along Action, In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litig., MDL No. 2542 (JPML Sept. 25, 2015), ECF No. 80 (attached hereto as Exhibit 3).  The Tag-Along Notice informed the JPML that Plaintiff's Complaint in this case "involves common questions of fact with the actions previously transferred by the Panel" that are pending in the Multidistrict Litigation.  Ex. 3, Tag-Along Notice at 1.  On September 29, 2015, the JPML issued a Conditional Transfer Order conditionally transferring Plaintiff's action to the Multidistrict Litigation. Conditional Transfer Order (CTO-2), In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litig., MDL No. 2542 (JPML Sept. 29, 2015), ECF No. 82 (attached hereto as Exhibit 4).  On October 5,

not dispute that the remaining requirements for jurisdiction under CAFA are satisfied.[5]

As explained below, Keurig has shown by a preponderance of the evidence, including Plaintiff's own Complaint and the Affidavit of Stephen Ferreira, attached hereto as Exhibit 1 ("**Ferreira Aff.**"), that the amount in controversy exceeds $5 million.

## II.   ARGUMENT

### A.   CAFA Is Designed To Expand Federal Jurisdiction Over Interstate Class Actions And Should Be Read Broadly.

CAFA gives federal district courts original jurisdiction over class actions "if, among other things, the 'matter in controversy exceeds the sum or value of $5,000,000.'"  Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1347 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)).  To determine whether the amount in controversy exceeds $5 million, the Court must aggregate the claims of all "'persons (named or unnamed) who fall within the definition of the *proposed* or certified class.'"  Id. at 1348 (quoting 28 U.S.C. § 1332(d)(1)(D)) (emphasis in original).

"CAFA 'is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'"  Westerfeld v. Indep. Processing, LLC, 621 F.3d 819, 822 (8th Cir. 2010) (quoting S. Rep. No. 109-14, at 43 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 41)).  As such, "no antiremoval presumption attends cases

---

Plaintiff filed her Notice of Opposition to the Conditional Transfer Order, and on the same day, the JPML set a briefing schedule that will be completed by November 9, 2015.  *See* JPML Docket ECF Nos. 85, 87 on JPML Docket Sheet for MDL No. 2542, In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litig. (attached hereto as Exhibit 5).

[5] Because Plaintiff concedes the other requirements of CAFA, Keurig's Opposition addresses only the amount-in-controversy requirement.  The other requirements of CAFA are clearly met.  *See* Notice of Removal at 4-6 (Sept. 21, 2015), ECF No. 1; *see also* Complaint. ¶ 126 (class action under Ark. R. Civ. P. 23); id. ¶ 129 (more than 100 putative class members); id. ¶¶ 1, 2, 127 (diversity of citizenship); Mot. to Remand (Sept. 22, 2015), ECF No. 3 (contesting only amount-in-controversy requirement).

invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014).

### B.     Keurig's Notice Of Removal Satisfies The Pleading Requirements Of 28 U.S.C. § 1446.

Plaintiff misstates the legal standard when she asserts that Keurig's Notice of Removal does not offer "evidence" of the amount in controversy. *See* Plaintiff's Memorandum in Support of Motion to Remand ("**Pl. Mem.**") at 2-4. A removal notice filed in federal district court "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." Dart Cherokee Basin Operating Co., 135 S. Ct. at 554. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. at 554; *see also* Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 944-45 (8th Cir. 2012) ("The removing party's 'burden of describing how the controversy exceeds $5 million' constitutes 'a pleading requirement, not a demand for proof.'") (quoting Spivey v. Vertrue, Inc., 528 F.3d 982, 986 (7th Cir. 2008) (Easterbrook, J.)). Keurig's Notice of Removal satisfied the pleading requirement, and this Opposition establishes by a preponderance of the evidence that the amount in controversy exceeds $5 million.

### C.     Plaintiff's Own Complaint And Keurig's Supporting Evidence Establish By A Preponderance Of The Evidence That The Amount In Controversy Exceeds $5 Million.

"Under the preponderance standard, the jurisdictional fact is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are." Grawitch v. Charter Commc'ns, Inc., 750 F.3d 956, 959 (8th Cir. 2014) (emphasis in original)

(internal quotations omitted).  "Defendants are not required to provide a 'formula or methodology for calculating the potential damages' . . . We have specifically rejected the need for this kind of formula or methodology, as it would require a defendant to 'confess liability' for the entire jurisdictional amount."  Raskas v. Johnson & Johnson, 719 F.3d 884, 888 (8th Cir. 2013) (quoting Hartis, 694 F.3d at 945).[6]

In assessing the amount in controversy, this Court must ignore Plaintiff's unsupported assertion that the amount in controversy does not exceed $2,500,000, and her subsequent claim that the damages alleged do not exceed $1 million.  Complaint ¶ 8; Pl. Mem. at 4.  As the Supreme Court has explained, courts must "ignore[]" pre-class certification stipulations that purport to limit the recovery being sought on behalf of the putative class.  Standard Fire Ins. Co., 133 S. Ct. at 1349-50; see also Jarrett v. Panasonic Corp. of N. Am., 934 F. Supp. 2d 1020, 1024 (E.D. Ark. 2013) ("[T]he Court, in following CAFA's requirement to aggregate the proposed class members' claims, must ignore Plaintiff's stipulation.").  "That is because a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified."  Standard Fire Ins. Co., 133 S. Ct. at 1349.  It was for this very reason that this Court rejected an impermissible stipulation by Plaintiff's counsel regarding the purported amount in controversy just last year.  Stafford v. Whole Foods Mkt. Cal., Inc., No. 4:14CV00420 JLH, 2014 WL 4755988, at *3 (E.D. Ark. Sept. 24, 2014) (Holmes, J.) ("Although [plaintiff] alleged that aggregate damages 'will not exceed the sum or value of $4,999,999.00,' that allegation does not bind the putative class members because the class has not been certified.").

---

[6] Accordingly, Keurig's arguments herein pertain solely to the issue of the amount in *controversy* for purposes of assessing federal jurisdiction under CAFA, and Keurig neither admits liability nor the existence of any damages purportedly suffered by Plaintiff or the putative class.  Keurig's brief "concerns

The amount in controversy in this case plainly exceeds $5 million, based on (1) the fact that a virtually-identical putative class of Arkansas indirect purchasers has alleged an amount in controversy exceeding $5 million; (2) the approximate number of members in the putative Arkansas Class and the amount that Plaintiff alleges is in controversy for each member; and (3) a simple calculation estimating the total amount in controversy for the putative Arkansas Class as a whole (rather than on an individual basis).

      **1.**    **The Amount In Controversy Exceeds $5 Million Because A Virtually-Identical Putative Class Of Arkansas Indirect Purchasers Has Alleged An Amount In Controversy Exceeding $5 Million.**

The IPPs in the Multidistrict Litigation, bringing the same claims as Plaintiff (*supra* n.3), allege that the amount in controversy for their putative Arkansas Indirect-Purchaser Class exceeds $5 million.  *See* <u>IPP MDL Compl.</u> ¶¶ 67, 214(b); <u>Notice of Removal</u> ¶¶ 17-19.  The class definitions are nearly identical, except that the purported Arkansas class period in the Multidistrict Litigation is two months *shorter* than Plaintiff's purported class period.  *Compare* <u>Complaint</u> ¶ 127, *with* <u>IPP MDL Compl.</u> ¶ 214(b).  The fact that no named plaintiff in the Multidistrict Litigation is from Arkansas is irrelevant for purposes of the Court's jurisdictional analysis, and Plaintiff offers no authority to the contrary.  *See* <u>Pl. Mem.</u> at 3.

      **2.**    **The Amount In Controversy Exceeds $5 Million By A Preponderance of The Evidence Because Plaintiff Pled A Claim Per Class Member Of $1,000 And The Putative Arkansas Class Exceeds 5,000 Members.**

Plaintiff has alleged that each member of the putative Arkansas Class has a claim worth no more than <u>$1,000</u>.  *See* <u>Complaint</u> ¶ 8 ("No Class Member has a claim which exceeds $1,000.00. . . .."); *see also* <u>Pl. Mem.</u> at 4 (similar).  The Court may consider this assertion in

what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks.'"  <u>Hartis</u>, 694 F.3d at 945 (citation omitted).

evaluating the amount in controversy.  *See, e.g.*, <u>Stafford</u>, 2014 WL 4755988, at *3 (citing

<u>Grawitch</u>, 750 F.3d at 960) (holding that  "by alleging damages up to $74,999.00 per class

member, [plaintiff] has placed that amount in controversy for each class member.").[7]

Because Plaintiff herself has asserted $1,000 as the amount in controversy for each

member of the putative Arkansas Class, the amount in controversy here exceeds $5 million by a

preponderance of the evidence so long as the number of putative Arkansas Class members

exceeds 5,000.  *See* <u>Stafford</u>, 2014 WL 4755988, at *3 ("Taking the complaint at face value, if

each class member has a claim that might be as much as $74,999.00, and if the class is in the

thousands, a jury might conclude that the class suffered damages of more than $5,000,000.00.").

Keurig's Ferreira Affidavit plainly establishes that the putative Arkansas Class has far

more than 5,000 members.  In fiscal years 2012-2015,[8] Keurig sold over 110,000 Keurig K-Cup

Brewers ("**K-Cup Brewers**") in Arkansas.  *See* Ferreira Aff. ¶¶ 2-3.  Each K-Cup Brewer sold in

Arkansas creates at least one—or more, in households with multiple coffee purchasers—possible

member of the putative Arkansas Class of indirect purchasers.  The overwhelming majority of

consumers who own K-Cup Brewers purchase at least some K-Cups through indirect channels,

---

[7] *See* <u>Class Action Compl.</u> ¶ 41, <u>Stafford v. Whole Foods Market Cal., Inc.</u>, No. 4:14-cv-00420-JLH, ECF No. 2 (E.D. Ark. July 22, 2014) (attached hereto as Exhibit 6) (alleging "[n]o Class Member has a claim which exceeds $74,999.00").

[8] Keurig's fiscal year 2012 started September 25, 2011, and Keurig's fiscal year 2015 ended September 26, 2015.  Keurig's publicly-filed annual reports, which show Keurig's fiscal year calendar, are available on Keurig's website.  *See* Keurig Green Mountain, *Investors: Annual Reports and Proxies*, *available at* http://investor.keuriggreenmountain.com/annuals-proxies.cfm.  Notably, Plaintiff's purported class period (which starts in July 2010) also includes part of fiscal year 2010, which ended on September 25, 2010, and all of fiscal year 2011, which ended on September 24, 2011.  *See id.*  As a result, the discussion below necessarily underestimates the number of possible members of the putative Arkansas Class of indirect purchasers and the amount of indirect K-Cup sales in Arkansas during the purported class period.

rather than exclusively through Keurig's direct-to-consumer channels (*e.g.*, Keurig.com).[9]  *See* Ferreira Aff. ¶ 8.  Nationally, less than 10% of K-Cups are sold directly to consumers.  *See* Ferreira Aff. ¶ 7.  Plaintiff offers no evidence to suggest that more than 95% of Arkansas residents who own K-Cup brewers never purchased a single K-Cup indirectly in Arkansas or otherwise shows that the putative Arkansas Class has fewer than 5,000 members.[10]

### 3. <u>Consideration Of The Class-wide Amount In Controversy Establishes By A Preponderance Of The Evidence That The Amount In Controversy Exceeds $5 Million.</u>

An examination of Keurig's Arkansas sales to the purported class also indicates by a preponderance of the evidence an amount in controversy exceeding $5 million.  In fiscal years 2012-2015, indirect sales of Keurig K-Cups in Arkansas totaled over $76,500,000.  *See* Ferreira Aff. ¶¶ 4, 6.[11]  With more than $76,500,000 in Arkansas K-Cup indirect sales, the amount in controversy would exceed $5 million if Plaintiff alleged an overcharge of 6.6% or higher.  Keurig will contest any finding of liability or damages here, but notes for the purposes of this Opposition that two of the Multidistrict Litigation complaints expressly allege an overcharge well above 6.6%.  *See* <u>Direct Purchaser Pls.' Consol. Am. Class Action Compl.</u> ¶ 112, <u>In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.</u>, MDL No. 2542 (Feb. 11, 2015),

---

[9] As explained in the Complaint, "indirect" sales refers to K-Cups that are not purchased directly from Keurig via its website or its single retail store in Burlington, Massachusetts but are instead purchased from a third-party retailer or distributor.  *See* <u>Complaint</u> ¶¶ 23, 24.

[10] The Court should not credit Plaintiff's unsupported and wildly implausible assertion in her Memorandum that the putative Arkansas Class has "fewer than 1,000 Class Members."  *See* <u>Grawitch</u>, 750 F.3d at 959-60 & n.2 (in assessing amount in controversy in case removed under CAFA, ignoring boilerplate allegation "[t]hat there exist more than 100 potential class members" and relying instead on defendant's affidavit demonstrating possible size of putative class); <u>Class Action Pet.</u> ¶ 23, <u>Grawitch v. Charter Commc'ns Inc.</u>, No. 1222-CC-09754 (City of St. Louis, MO Circuit Ct. Sept. 14, 2012) (attached hereto as Exhibit 7) .

[11] Notably, this figure excludes sales at Bed Bath & Beyond, a major retailer of K-Cups, which does not release store-level sales statistics.  *See* Ferreira Aff. ¶ 5.

ECF No. 237 (attached hereto as Exhibit 8) (alleging K-Cup prices are "at least 10% to 15% above competitive levels"); *see also, e.g.*, <u>TreeHouse Am. & Supp. Compl.</u> ¶ 132, <u>In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.</u>, MDL No. 2542 (Dec. 2, 2014), ECF No. 86 (attached hereto as Exhibit 9) (same).[12]

### III.   <u>CONCLUSION</u>

For the foregoing reasons and authority, Keurig has shown, by a preponderance of the evidence, that the amount in controversy exceeds $5 million.  Keurig respectfully requests that Plaintiff's Motion to Remand be denied.

---

[12] The IPPs in the Multidistrict Litigation make no claims of a specific overcharge.  *See* <u>IPP MDL Compl.</u> ¶¶ 37-63 (alleging generally that indirect purchasers paid "supracompetitive prices for Keurig K-Cups").

Respectfully submitted,


**HOPKINS LAW FIRM**
**A Professional Association**
Attorneys at Law
1000 West Second Street
Little Rock, Arkansas 72201
www.hopkinslawfirm.com
Telephone: (501) 375-1517
Facsimile:   (501) 375-0231
Email: sheadlee@hopkinslawfirm.com


<u>**By: /s/ Stewart Headlee**</u>
**Stewart Headlee**
        Ark. Bar No. 2003091

        **Gregory M. Hopkins**
        Ark. Bar No. 81093

**<u>CERTIFICATE OF SERVICE</u>**

I, Stewart Headlee, hereby certify that on October 9, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Thomas P. Thrash
Marcus N. Bozeman
THRASH LAW FIRM
1101 Garland Street
Little Rock, AR 72201

**<u>/s/Stewart Headlee</u>**
**Stewart Headlee**