IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JULIE RAINWATER, individually and            PLAINTIFF
on behalf of all others similarly situated

v.            No. 4:15CV00590 JLH

KEURIG GREEN MOUNTAIN, INC.            DEFENDANT

## OPINION AND ORDER

Julie Rainwater commenced this action against Keurig Green Mountain, Inc., in the Circuit Court of Faulkner County, Arkansas, alleging claims against Keurig for violation of the Arkansas Deceptive Trade Practices Act and unjust enrichment. The complaint alleges that Keurig has engaged in unlawfully anti-competitive conduct by monopolizing the market and forcing consumers to pay supracompetitive prices for its products. Rainwater seeks to represent a class of persons in Arkansas who have indirectly purchased at least one Keurig K-Cup, which was manufactured or licensed by Keurig, its subsidiaries, affiliates, or joint ventures for their own use and not for resale since July of 2010. Keurig removed the action to this Court based on diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Rainwater has filed a motion to remand. For the following reasons, Rainwater's motion to remand is denied.

Keurig is a Delaware corporation with its principal place of business located in Vermont. Document #2 at 1, ¶2. Rainwater is a resident of Arkansas. *Id*. at 1, ¶1. Rainwater indirectly purchased at least one Keurig K-Cup that was manufactured or licensed by Keurig or its affiliates, for her own use and not for resale. *Id*. Rainwater alleges that because of Keurig's anti-competitive conduct–conspiring with its major horizontal competitors in the coffee-roasting business, engaging in extensive contracts in restraint of trade throughout the supply chain, tying sales of its single-serve brewers to sales of its single-serve cups, and monopolization–she paid "supracompetitive prices" for

Keurig K-Cups. *Id.* at 3, ¶¶10-12. These allegations are the basis for Rainwater's claims under the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq.*, as well as her claim for unjust enrichment.

Any civil action brought in a state court may be removed to federal district court if it is an action of which federal courts have original jurisdiction. 28 U.S.C. § 1441(a). As noted above, Keurig contends that this Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Congress enacted CAFA in 2005 so that federal courts could preside over interstate cases of national importance. *Westerfield v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). CAFA grants federal jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 in the aggregate, any class member and any defendant are citizens of different states, and there are at least 100 class members. 28 U.S.C. § 1332(d)(2). The burden is on the removing party to establish that these requirements are met. *Westerfield,* 621 F.3d at 822. Rainwater and Keurig do not dispute that the diversity requirement is met, nor do they dispute that there are at least 100 class members, so the issue is whether Keurig has established that the amount in controversy exceeds $5,000,000. Document #4.

Rainwater alleges in her complaint that no class member has a claim that exceeds $1,000 and that the aggregate amount of the class members' claims will not exceed $2,500,000. Document #2 at ¶8. Those allegations do not determine the issue because Rainwater lacks "the authority to concede the amount-in-controversy issue for the absent class members." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349, 185 L. Ed. 2d 439 (2013).

The amount in controversy must be established by a preponderance of the evidence. *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 789 (8th Cir. 2012) (citing *Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009)). "Under the preponderance standard, '[t]he jurisdictional fact . . . is

not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are.'" *Bell*, 557 F.3d at 959 (quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)). The burden under this standard is a pleading requirement, rather than a demand for proof, but the inquiry is fact-intensive. *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 944-45 (8th Cir. 2012). The amount in controversy is evaluated at the time of removal. *Grawitch v. Charter Commc'n, Inc.*, 750 F.3d 956, 959 (8th Cir. 2014).

Rainwater seeks to represent a class that she estimates to number "in the hundreds." Document #2 at 24, ¶129. As noted, the complaint alleges that no class member has a claim that exceeds $1,000 and that the aggregate amount in controversy will not exceed $2,500,000. *Id.* at 3, ¶8. But Keurig has provided the Court with an affidavit directly contradicting these allegations. Document #7-1. The affidavit is from Stephen Ferreira, Vice President of Finance for the U.S. commercial group at Keurig. *Id.* Ferreira states, based on knowledge obtained from business records available to him by virtue of his employment, that in the fiscal years 2012-2015, more than 100,000 Keurig K-Cup brewers[1] were sold in Arkansas through third-party retailers, that sales of K-Cups through third-party retailers in Arkansas totaled more than $75,000,000 during that time, and that less than 10% of all K-Cups sold in the United States are sold directly to consumers by Keurig. *Id.* Ferreira further states that "[b]ased on Keurig's past experience and sales records, Keurig understands that nearly all consumers who own K-Cup brewers purchase at least some K-Cups through third-party retailers or distributors (*i.e.*, through indirect channels)." *Id.*

If 100,000 Keurig K-Cup brewers were sold during the past three years, the class is defined to include the last five years, and nearly all consumers who own brewers–whether purchased in the

---

[1] The figures in the affidavit exclude sales through Bed Bath & Beyond because they do not release store-level sales statistics or otherwise provide state-level data. *Id.*

past five years or previously–will purchase K-Cups indirectly, then it is overwhelmingly likely that the class will include more members than alleged. Relying on the allegation that no class member has a claim that exceeds $1,000, the putative class must have more than 5,000 members for the amount in controversy to exceed $5,000,000. Rainwater alleges that "Keurig Single-Serve Brewers use portion packs that are not physically compatible with other types of Single-Serve Brewers. Similarly, Single-Serve Brewers manufactured by Keurig's brewer competitors use portion packs that are not physically compatible with Keurig Single-Serve Brewers." Document #2 at 8-9, ¶35. Because other single serve portion packs are not compatible with Keurig Single-Serve Brewers, each purchaser of a Keurig Brewer is likely to purchase at least one K-cup. Because more than 100,000 brewers were sold in Arkansas during the relevant time period, according to the affidavit, and because those consumers are highly likely to purchase at least one K-Cup during that time, Keurig has established that the number of putative class members exceeds 5,000. If each class member has a claim that might be as much as $1,000, and if the class exceeds 5,000 members, a jury might conclude that the class suffered damages of more than $5,000,000.

## CONCLUSION

Because Keurig has established by a preponderance that the amount in controversy exceeds $5,000,000, this Court has subject matter jurisdiction pursuant to CAFA. Rainwater's motion to remand is DENIED. Document #3.

IT IS SO ORDERED this 22nd day of October, 2015.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE